**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26Y0581
In the Matter of Mylee McKinney

Decided: June 16, 2026

PER CURIAM.

This disciplinary matter is currently before the Court on the report and recommendation of Special Master Patrick E. Longan, filed pursuant to Bar Rule 4-214, who recommends that respondent Mylee McKinney (State Bar No. 122143), be disbarred for her violations of Rules 1.2(a), 1.3, 1.4, 1.5(a), 3.2, 8.1(a), and 8.4(a)(4) of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102(d), in connection with four client matters – State Disciplinary Board Docket ("SDBD") Nos. 7997, 8001, 8036, and 8037 – contained in two formal complaints. [1] The

---

[1] The Formal Complaint underlying two of the matters, SDBD Nos. 7997 and 8001, has a lengthy history before us. A Notice of Discipline related to those two matters, along with seven others, was originally filed in this Court in March 2025, in which the State Bar sought to disbar McKinney without additional process because McKinney failed to provide a sworn response to the Notice of Investigation as required by Bar Rule 4-208.3(b). However, in May 2025, we referred the matter to the Special Master to determine whether McKinney ought to be deemed to be in default. See S25Y0888 (May 6, 2025 order). Upon referral, the Special Master held a hearing – which McKinney attended via Zoom – and issued a report in which he determined that McKinney was *not* in default with respect to 7997 and 8001 because she had previously filed sworn responses, and, accordingly, those matters were referred to the State Bar to issue the formal complaint underlying the instant matter. See *In the Matter of McKinney*, 323 Ga. 430 (2026). As to the other seven matters,

maximum penalty for a violation of Rules 1.2(a), 1.3, 8.1(a), and 8.4(a)(4) is disbarment, and the maximum penalty for a violation of Rules 1.4, 1.5, and 3.2 is a public reprimand. McKinney, who is in default, has not filed any exceptions to the Special Master's report and recommendation, and the time has run for her to do so. See Bar Rule 4-218. Having reviewed the record before us, we agree that disbarment is appropriate under the facts of this case.

In August 2025, McKinney acknowledged service of the two formal complaints, but she did not answer them or otherwise respond. Accordingly, the Special Master entered an order granting the State Bar's motion for default for failure to answer the formal complaints in October 2025. As deemed admitted based on her default, see State Bar Rule 4-212, the Special Master made the following findings of fact and conclusions of law with regard to each disciplinary case.

*SDBD No. 7997*: In March 2024, a client retained McKinney to appear on his behalf at a hearing scheduled for April 11, 2024, regarding a child custody matter, and paid $5,000 as an initial retainer. The day before the hearing, McKinney and the client had a telephone discussion to prepare for the hearing. McKinney told the client that she thought it would be in his best interest to continue the hearing and engage in settlement negotiations. The client agreed on the condition that McKinney would request a new hearing as soon as possible, and a few days later, McKinney sent the client a parenting plan for him to review and approve. She then sent him a bill for another $5,000, which the client

---

after the Special Master determined that McKinney was in partial default as to some of the alleged Rules violations, we concluded that default should have been opened in full as to all pending matters and remanded the matters to the State Bar for it to proceed on all remaining Rules violations pursuant to Bar Rule 4-208.4, et seq. Id. It appears that these matters remain pending.

promptly paid. On May 1, the client sent McKinney a text about the new hearing date, but McKinney was unable to provide one. On June 17, 2024, the client emailed McKinney about the court date, but she did not respond. The client then checked the trial court's records and discovered that McKinney had not made an entry of appearance in the case. Two days later, the client emailed McKinney a copy of an affidavit to which she did not respond. On July 1, 2024, the client emailed McKinney terminating her as counsel and requesting a refund. McKinney did not respond to the request and has not issued a refund.

Based on her default for failing to answer the formal complaints, the Special Master concluded that McKinney admitted to violating Rules 1.2(a),[2] 1.3,[3] 1.4,[4] 1.5(a),[5] 3.2,[6] and 8.4(a)(4).[7]

*SBDB No. 8001*: In September 2023, a client retained

---

[2] Providing that, "a lawyer shall abide by a client's decisions concerning the scope and objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued."

[3] Providing that, "[a] lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence … means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

[4] Providing that "[a] lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent … is required[]; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of matter; and (4) promptly comply with reasonable requests for information."

[5] Providing that, "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee[.]"

[6] Providing that, "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

[7] Providing that it shall be a violation of the GRPC for a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation."

McKinney for a family law matter for a flat fee of $2,500. The client had frequent issues with McKinney failing to communicate with her. The client had informed McKinney that her husband was verbally and mentally abusive and they had three small children. The client made multiple appointments to speak with McKinney on her "Calendly site"; however, McKinney did not appear at these appointments. The client last heard from McKinney in July 2024, and in August 2024, she "Googled" McKinney and learned that her office was permanently closed and her website was no longer active.

Based on her default, the Special Master concluded that McKinney violated Rules 1.2(a),1.3, 1.4, 1.5(a), and 3.2.

*SDBD No. 8036*: A client retained McKinney in January 2024 to domesticate a Nevada child custody agreement. In February 2024, McKinney provided the client with a "stamped-filed" copy of a Petition for Registration of a Foreign Child Custody Determination, Modification of Custody and Visitation and Request for Emergency Hearing ("Petition"). The file stamp purported to show the Petition was filed in Bryan County on February 8, 2024, and a specific case number was listed. When the client continued to have issues communicating with McKinney, she contacted the Bryan County clerk's office to check the status of her case and discovered that the file stamp she was provided with matched another case not related to her matter and which also did not involve McKinney. The clerk further confirmed that McKinney had not filed anything on behalf of the client in Bryan County. When the client confronted McKinney about this, McKinney told the client that McKinney had made a mistake and refunded her the $2,500 she paid. McKinney's conduct led to the client being arrested for not sending her child to her ex-husband for spring break, and the

4

client had to hire another attorney to handle the matter she originally hired McKinney to handle, as well as a contempt charge. McKinney responded to the initial Notice of Investigation in this matter. In her response, she stated that she must have "accidentally clicked into another case's draft filing and uploaded the documents," and that, although the documents were initially accepted by the court clerk's office, they were then rejected "due to me filing the matter into the incorrect case by mistake." The response also included a screenshot of a "PeachCourt" list of cases for "Mylee McKinney" that included a reference to the client's case name with a filing date and time. However, the reference to the case name was in a different type face and color and did not include a reference to a case number the way the other five listed cases did. Further investigation determined that McKinney had fabricated the pleading with the false file stamp to cause the client to believe McKinney had taken appropriate action on her case when she had not done so.

Based on her default, the Special Master concluded that McKinney admitted to violating Rules 1.2(a),1.3, 1.4(a), 3.2, 8.1(a),[8] and 8.4(a)(4).

*SDBD No. 8037*: In 2020, McKinney represented a client in an uncontested divorce, but the case was dismissed when the client and his wife reconciled. In late 2022, the client contacted McKinney about filing for divorce again, but she was working for a firm on personal injury matters and so she referred him to another attorney. However, in September 2023 when she left the firm, the client hired McKinney to take over his divorce. Shortly after the client engaged her, McKinney stopped communicating with him. The client's wife served discovery on the client through

---

[8] Providing that "a lawyer in connection with a … disciplinary matter, shall not: (a) knowingly make a false statement of material fact[.]"

McKinney, and McKinney did not respond by the discovery deadline and failed to respond or otherwise object to the wife's subsequent motion to compel. McKinney then filed a late notice of conflict for a hearing scheduled October 30, 2023, asking that the client's matter be continued, but it was not rescheduled. The trial court then entered a temporary order in the matter on November 8, 2023, and opposing counsel signed for McKinney with express permission, although the client had not given McKinney permission to agree to the terms of the temporary order. In December 2023, the trial court granted the client's wife's motion to compel because McKinney had not contested it, and the trial court ordered the client and McKinney to respond to the outstanding discovery within 10 days. McKinney failed to notify the client or otherwise respond to the order. The client's wife filed a motion for sanctions in January 2024, and in February 2024, the client filed a request for the withdrawal of McKinney as his counsel. In March 2024, the court conducted a hearing on the motion for sanctions and McKinney appeared virtually and argued that she had provided some discovery responses but then admitted that her responses were not otherwise compliant, and stated that she had intended to provide more discovery and had intended to withdraw at the client's request but did neither. The trial court ordered her to pay $1,500 in attorney fees and ordered her removed from the case. In addition, as the client begged McKinney to take action in the case, McKinney sent texts to the client that were "unprofessional and abusive" and then she eventually stopped communicating with the client altogether and never responded to the grievance.

Based on McKinney's default, the Special Master found that she violated Rules 1.2(a), 1.3, 1.4, and 3.2.

After finding these violations, the Special Master looked to

the ABA Standards for Imposing Lawyer Sanctions for determining the appropriate level of discipline, see *In the Matter of Morse*, 266 Ga. 652, 653 (1996), and considered the duty violated, McKinney's mental state, the potential or actual injury caused by her misconduct, and the existence of aggravating and mitigating factors. See ABA Standard 3.0. Regarding the first three considerations, the Special Master concluded that disbarment was the presumptive penalty for her: (1) Rule 8.4(a)(4) violations, given her intentional dishonesty and deceitfulness; (2) Rule 8.1(a) violation based on her intentional deception in one client matter, which also caused harm to her client; and (3) Rules 1.3 and 1.2 violations given that she willfully disregarded her clients' matters and without just cause abandoned all of her clients and failed to abide by their direction, causing harm to them. See ABA Standards 4.41 (lack of diligence); 4.61 (lack of candor); 5.11(b) (failure to maintain personal integrity); and 6.21 (abuse of the legal process). As for her Rules 1.5(a), 1.4, and 3.2 violations, the Special Master determined that McKinney's retention of client fees, and her failures regarding communication and to expedite litigation were negligent, such that the presumptive penalty for these violations was a reprimand. See ABA Standard 4.43 (lack of diligence); ABA Standard 6.2 (abuse of the legal process); and ABA Standard 7.3 (duties owed as a professional).

As for aggravating factors, the Special Master determined that McKinney acted with a dishonest and selfish motive, see ABA Standard 9.22(b); engaged in a pattern of misconduct in the representation of all four clients, see ABA Standard 9.22(c); admitted to committing multiple offenses, ABA Standard 9.22(d); and refused to acknowledge the wrongful nature of her conduct by not responding to the formal complaints. See ABA Standard 9.22(g). In addition, the Special Master found that one of her clients was a vulnerable victim, see ABA Standard 9.22(h), and that

7

McKinney had displayed indifference to making restitution by not refunding the fees paid to her, see ABA Standard 9.22(j).[9]

The Special Master found that the only mitigating factor was that McKinney did not have any disciplinary history. See ABA Standard 9.32(a).

Considering McKinney's misconduct and the "dominance" of aggravating factors, the Special Master recommended disbarment. The Special Master noted that McKinney's violations of Rule 8.4(a)(4) alone would justify her disbarment, see *In the Matter of West*, 300 Ga. 777, 778 (2017) (concluding that Rule 8.4(a)(4) is "among the most serious violations with which a lawyer can be charged"), and considering this violation in conjunction with her other violations, the recommendation of disbarment is in accord with similar cases. See *In the Matter of Tuggle*, 319 Ga. 687, 697 (2024) (disbarring attorney on State Disciplinary Review Board's report and recommendation, who had no prior disciplinary history for violating Rule 8.4(a)(4) and other Rules, and who caused actual or potential injury to vulnerable clients, and showed a lack of remorse); *In the Matter of Holliday*, 308 Ga. 216, 217–18 (2020) (disbarring attorney in default on three notices of discipline, who had substantial experience in the practice of law and no prior disciplinary history, for violating Rules 1.2, 1.3, 1.4, 1.16, 3.2, and 8.4(a)(4)). In addition, the Special Master noted that McKinney's violation of Rule 8.1(a) by fabricating a pleading in SDBD No.

---

[9] The Special Master also considered it aggravating that McKinney fabricated a pleading to the State Disciplinary Board's investigator to deceive her into believing that she had taken appropriate action in SDBD No. 8036. See ABA Standard 9.22(f). However, where an attorney is charged with a violation of Rule 8.1(a) as was the case here, the Court does not allow the same actions to be used as an aggravating factor. See, e.g., *In the Matter of Hood*, 320 Ga. 440, 445 n.15 (2024); *In the Matter of Cleveland*, 317 Ga. 515, 518 n.13 (2023).

8036 also warranted disbarment, especially in conjunction with her violations of Rule 8.4(a)(4). See *In the Matter of David-Vega*, 318 Ga. 600, 608–09 (2024) (disbarring attorney on State Disciplinary Review Board's report and recommendation, who submitted fabricated email and text messages during disciplinary proceedings); *In the Matter of Eddings*, 314 Ga. 409, 417–18 (2022) (disbarring attorney on State Disciplinary Review Board's report and recommendation, for violating Rules 8.1 and 8.4(a)(4), among other Rules). Finally, the Special Master concluded that McKinney's pattern of abandoning clients also would, by itself, warrant disbarment. See, e.g., *Cleveland*, 317 Ga. at 515 (disbarring attorney in default on two notices of discipline for abandoning eight clients and defaulting in the disciplinary process); *In the Matter of Greene*, 320 Ga. 527 (2024) (disbarring attorney in default on a notice of discipline for abandoning three clients). In conclusion, considering the duties McKinney violated, her mental state, the harm or potential harm she caused to her clients, the aggravating and mitigating factors, and Georgia case law, the Special Master recommended disbarment.

Upon our review of the record, we agree with the Special Master that McKinney violated Rules 1.2(a), 1.3, 1.4, 1.5(a), 3.2, 8.1(a), and 8.4(a)(4) and that disbarment is warranted under the circumstances of this case. Moreover, the multitude of cases cited by the Special Master highlight that disbarment is consistent with the discipline imposed in similar cases.

Accordingly, it is ordered that the name Mylee McKinney be removed from the rolls of persons authorized to practice law in the State of Georgia.[10] McKinney is reminded of her duties under

---

[10] To the extent any other pending disciplinary matters involving

9

Bar Rule 4-219(b).

*Disbarred. All the Justices concur.*

---

McKinney are pending in this Court, see generally supra n.1, they will be placed on the Court's inactive docket and held, in the event McKinney elects to submit an application for reinstatement to the practice of law in the State of Georgia.